# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA PARRA, | ) 1:10-cv-1675 LJO GSA |
| | ) |
| | ) |
| | ) **FINDINGS AND RECOMMENDATIONS** |
| Plaintiff, | ) **REGARDING PLAINTIFF'S** |
| | ) **SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **BACKGROUND**

Plaintiff Christine Parra ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge Gary S. Austin for findings and recommendations to the District Court.[1]

///
///
///

---

[1] Defendant consented to this Court's jurisdiction on October 28, 2010. (Doc. 12). However, on October 5, 2010, Plaintiff declined to consent. (Doc. 9). Accordingly, this case is submitted to the District Court Judge based on these Findings and Recommendations.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed an application for supplemental security income on November 14, 2006, alleging disability beginning September 30, 2006. AR 108-111. Plaintiff's applications were denied initially and on reconsideration. AR 72-75, 77-81. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 76. ALJ Sharon L. Madsen held a hearing on April 7, 2009, and issued an order denying benefits on July 1, 2009. AR 12-20. The Appeals Council issued a decision affirming the ALJ's order. AR 1-3.

**Hearing Testimony**

At the hearing held on April 7, 2009, Plaintiff personally appeared and was assisted by attorney Mr. Jeffrey Milam. AR 21-54. Vocational Expert ("VE") Ms. Judith Najarian also testified.

Plaintiff was thirty-two years old at the time of the hearing. AR 27. She has an eighth grade education and never obtained an GED. AR 30. Plaintiff weighs one hundred and sixty-two pounds and is five feet four inches tall. AR 28. She is married and has two children, ages seven and five.[3] AR 28. She lives with her two children and husband in Section Eight Housing and the family is on AFDC. AR 28. She does not have a driver's license and is usually transported to appointments by her husband or a friend. AR 29.

Plaintiff does some of the household chores including cooking and shopping. AR 29. She attends church services every Sunday and also goes to the church once a week on Wednesdays to eat. AR 29. During a typical day, Plaintiff wakes up in the morning, has a cigarette and coffee, takes her medications, and gets her children to school. AR 30. During the day, she watches television, reads the bible, and waits for her children to come home. AR 30.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Although Plaintiff indicates she lives with two of her children, other reports in the medical record indicate that Plaintiff has seven daughters. AR 240. She also reported that she had twins but one of the babies died because it was premature. AR 239.

Plaintiff has a very limited work history.  AR 31.  In the past, she worked at Wawona Frozen Foods for three weeks.  AR 31.  Prior to the at time, she worked at Burger King as a cashier in January 1995.  AR 31.  Plaintiff has had no other jobs other than babysitting.

Plaintiff suffers from several physical ailments including asthma which is controlled with inhalers.  AR 32.  She also suffers from constant back pain which is exacerbated when she engages in activities.  AR 33.  To treat the pain, she takes Vicodin once or twice a day.  AR 34.  She also wears a back brace and uses a TENS unit but has had limited success with those treatments.  AR 33.  Plaintiff can sit for sixty minutes and stand for forty-five minutes.  She is able to walk ten blocks but can only lift a gallon of milk.  AR 37.  She is also able to put on her shoes and socks without difficulty.  AR 37.  Plaintiff was overweight in the past and she suffers from diabetes which she is able to control with medication and weight loss.  AR 42.

In addition to her physical ailments, Plaintiff also suffers from depression and anxiety.  AR 34.  Approximately three days a week she is unable to get out to bed and does not take a shower.  AR 34.  Plaintiff isolates herself when suffering from depression.  Although she attends church weekly, she is not involved in any activities and has limited contact with other members of the congregation while she is there.  AR 35.  She is only able to concentrate for thirty minutes at a time and she has difficulty remembering what she has seen on television or has read.  AR 35, 40.  Her ability to concentrate decreases when she suffers from anxiety attacks and when dealing with stressful situations such as financial difficulties or when her children misbehave.  AR 40, 43.  As a result of her psychological conditions, she is unable to sit still.  AR 35.  Plaintiff has had difficulty with aggression in the past and has punched walls but does not do this anymore.  AR 35-37.  She also suffers from hallucinations daily which include seeing her deceased uncle.  AR 36.  During these episodes, her uncle talks to her and she also hears birds whistling.  42-43.  The hallucinations distract her although not as much as they have in the past.  AR 36, 43.  She is taking Seroquel to treat the hallucinations and her bipolar disorder.  AR 39.  She also takes Zoloft and Mirtazapine for depression and Clonazepam to treat her anxiety.  AR 38.  Some of these medications are new and it is too early to determine whether they are effective.  AR 40.  Previously she was stabilized on medication but still had periods of decompensation.  AR 44-45.

1       In the past, Plaintiff has also struggled with drug and alcohol addiction. She has been
2  clean and sober for four years except that she had one drink in December 2008. AR 36. She
3  graduated from Fresno New Connections and she currently attends Alcoholics Anonymous. AR
4  37-38.
5       Ms. Najarian, the VE also testified at the hearing. AR 45-51. She was asked to consider
6  a hypothetical worker with Plaintiff's educational and work history who has no exertional
7  limitations but must have limited exposure to dust, gases, and fumes. The worker is also limited
8  to simple routine tasks with occasional exposure to the public. AR 46. The VE indicated this
9  person would be able to work as packing machine operator, a carrier packer, and a cake striper.
10 AR 46-47.
11      The VE was asked to consider a second hypothetical for an individual with the same
12 characteristics of the above hypothetical except that the worker could only perform sedentary
13 work and was limited to simple routine tasks. AR 47. The VE indicated that the above jobs
14 would still be available. AR 47.
15      The VE was asked to consider a third hypothetical in which an individual could only
16 perform light work and simple routine tasks and also could only have limited exposure to the
17 public. AR 48. The VE testified that positions as a sub assembler, a sewing machine operator,
18 and a price marker would be available. AR 48.
19      When asked to consider a fourth hypothetical that included the same restrictions as
20 hypothetical three, but also added an inability to concentrate for more than thirty minutes at a
21 time, the VE indicated that no jobs would be available. AR 48.
22      Plaintiff's attorney asked whether any jobs would be available to an individual with mild
23 to moderate limitations in: 1) the ability to function independently; 2) the ability to complete a
24 normal workday and work without interruptions from psychologically based symptoms; 3) the
25 ability to work at a consistent pace; 4) the ability to interact with co-workers; 5) and the ability to
26 withstand the stress of a normal workday. In addition to these mild to moderate limitations, the
27 individual also possesses mild limitations in her ability to: 1) deal with changes in the work
28 setting; 2) sustain an ordinary routine without special supervision; 3) perform activities within a

4

schedule; 4) maintain regular attendance and be punctual; 5) accept instructions from a supervisor and respond appropriately to criticism; 6) maintain attention to concentration to perform detailed work activities; and 7) to remember location and work-like procedures. AR 49. The VE noted that this individual would not be able to work. AR 50.

### Lay Opinion Testimony

Plaintiff's husband, Esteban Parra, completed a third-party assessment on December 6, 2006. AR 148. He did not describe any physical limitations and reported that Plaintiff could walk for two miles. AR 153. He stated that Plaintiff went outside every day although she did not like to go out alone. AR 151. Mr. Parra checked boxes indicating that Plaintiff's impairments affected her abilities to understand and follow instructions, that she could not pay attention for more than ten minutes, and that she had difficulty with her memory. He also reported that Plaintiff had difficulty getting out of her pajamas, bathing, and combing her hair. AR 149. He further indicated that Plaintiff was able to get along with authority figures, was good at handling stress, and changes in routine. AR 151, 154.

### Medical Record

The entire medical record was reviewed by the Court (AR193-605), however, only those medical records relevant to the issues on appeal will be addressed below as needed in this opinion.

### ALJ Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 20. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date of October 30, 2006. AR 14. Further, the ALJ identified bipolar disorder, depressive disorder, personality disorder, a history of polysubstance abuse, asthma, and a history of Scheuermann's disease as severe impairments. AR 13. Nonetheless, the ALJ determined the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 14-15.

Based on her review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry fifty pounds occasionally and twenty five pounds frequently, and that she can sit, stand, and/or walk for six hours out of an eight hour day. However, the ALJ noted that Plaintiff must avoid exposure to fumes, dusts, gases and poor ventilation. Moreover, the ALJ limited Plaintiff to performing simple routine tasks with occasional contact with the public. AR 15. After noting that Plaintiff has no past relevant work, the ALJ determined that there were significant number of jobs in the national economy that Plaintiff can perform including a package sealer, a carrier packer, and a cake striper. AR 20. Based on the above, the ALJ determined Plaintiff was not disabled as defined by the Social Security Act. AR 18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

///

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Here, Plaintiff argues that: (1) she is disabled based on the VE's testimony and the limitations identified by Drs. Gallucci and Hirokawa; 2) that the ALJ failed to provide sufficient reasons to reject the Dr. Morgan's and Dr. Rodriguez's treating physicians opinions; 3) that the ALJ did not give germane reasons to reject the lay testimony of Plaintiff's husband; and 4) the ALJ failed to consider Plaintiff's anxiety and obesity.

**DISCUSSION**

*Physician Opinion Evidence and Plaintiff's Psychological Impairments*

Plaintiff argues that all three of the mental health professionals' opinions rendered her disabled based on the VE's testimony. In opposition, Defendant contends that Plaintiff has misinterpreted Drs. Hirowaka's and Dr. Gallucci's reports and that the ALJ properly rejected Dr. Morgan's opinion. Defendant further argues that the ALJ properly interpreted the medical record and the VE testimony when formulating Plaintiff's RFC and properly determined Plaintiff is not disabled.

Cases in this circuit distinguish among the opinions of three types of physicians: 1) those who treat the claimant (treating physicians); 2) those who examine but do not treat the claimant (examining physicians); and 3) those who neither examine nor treat the claimant (nonexamining

physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

There are four medical opinions at issue in this case: (1) Dr. Hirokawa Ph.D., a state agency consulting psychologist, 2) Dr. Gallucci, Psy.D, a state agency non-examining psychiatrist, 3) Dr. Morgan, M.D., Plaintiff's treating psychiatrist, and 4) Dr. Rodriguez, M.D., Plaintiff's treating physician.[4]

*Dr. Hirokawa*

On April 5, 2007, state agency consultative psychologist Greg Hirokawa, Ph.D., performed a psychiatric examination of Plaintiff. AR 239-244. During the assessment, Plaintiff's chief complaints were that she was feeling depressed, that she suffered from anxiety with panic attacks, that she was hearing voices and had increased irritability. She also reported having racing thoughts, mood swings, difficulty concentrating, and that it was hard for her to be

---

[4] Dr. Rodriguez's opinion will not be discussed in this order because his report relates to Plaintiff's physical condition. Given the Court's findings related to Plaintiff's psychological impairments, a review of her physical condition is not necessary.

8

around others. AR 239-240. She reported that she had two prior suicide attempts in 1997 and 2002. AR 240.

During the examination, Dr. Hirokawa noted Plaintiff exhibited a normal stream of mental activity, appropriate thought content, and normal association of thought. AR 241. Although Plaintiff reported auditory hallucinations, she was not responding to internal stimuli during the interview. AR 241. Plaintiff's affect during the interview was depressed, and she reported that her sleep and appetite were fair.

Dr. Hirokawa ruled out bipolar disorder and diagnosed Plaintiff with a panic disorder without agoraphobia, polysubstance dependence in reported remission (axis I), as well as personality disorder not otherwise specified with borderline features (axis II). AR 243. When discussing his diagnosis and prognosis, Dr. Hirokawa explained that Plaintiff's symptoms of bipolar personality, depression, and anxiety disorders were in the mild range. AR 243. He also noted that Plaintiff had a personality disorder consisting of mood swings, poor interpersonal skills, and problems with relationships, but that her response to treatment in the past has been fair. AR 243. He further observed that Plaintiff's mental status was affected by economic, social environment, and bereavement stressors. AR 243. He rated Plaintiff's current GAF for the past year at 61.[5] AR 243. Dr. Hirokawa found that Plaintiff was able to perform simple three-step commands. AR 242. In addition, he opined that she had mild limitations in her ability to: 1) understand, remember, and carry out very short, simple and detailed instructions; 2) maintain attention and concentration for extended periods of time; 3) accept instructions from a supervisor and respond appropriately to criticism; 4) perform activities within a schedule, maintain regular attendance, and be punctual; 5) sustain an ordinary routine without special supervision; 6) deal with changes in the work setting; and 7) remember location and work-like

---

[5] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV"). A GAF between 61-70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

procedures. AR 243-244. He further reported that she had "mild to moderate" limitations in her ability to: 1) function independently; 2) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace; 3) interact with co-workers; and 4) withstand the stress of a routine workday. AR 243-244. He also opined that the likelihood of Plaintiff emotionally deteriorating in a work environment is minimal to moderate. AR 244.

*Dr. Gallucci*

After reviewing Plaintiff's medical record, on June 1, 2007, non-examining consultative psychologist Adrianne Gallucci, Psy.D., completed a psychiatric review. In the report, Dr. Galluci found that Plaintiff was "not significantly limited" in most mental activities. However, she noted Plaintiff was "moderately limited" in her ability to: 1) complete a normal work day or work week and to perform at a consistent pace; 2) get along with co-workers or peers; 3) respond to changes in the work setting; 4) maintain social functioning, and 5) maintain concentration, persistence, or pace. AR 266, 270-271. In an explanatory narrative, Dr. Gallucci explained that, despite these moderate limitations, Plaintiff's abilities regarding concentration and persistence, social functioning, and adaptive functioning were "adequate," and that she had "no significant" impairment in comprehension or memory. AR 272.

*Dr. Morgan*

In November 2007, Dr. Sarah Morgan, M.D., Plaintiff's treating psychiatrist at Sequoia Community Health Center completed an assessment indicating that Plaintiff was moderately limited in activities of daily living and in maintaining concentration, persistence or pace; was markedly limited in maintaining social functioning; and had experienced three lengthy episodes of decompensation within a year. AR 313-316. Dr. Morgan also indicated that Plaintiff had difficulty concentrating, and was irritable when dealing with others. AR 317. Dr. Morgan indicated a guarded prognosis and noted that she had treated Plaintiff since August 1, 2006, and the Plaintiff still complains of multiple symptoms despite being on multiple medications. AR 317.

*ALJ's Analysis*

With regard to the mental health professional opinions, the ALJ performed an analysis pursuant to section 12.00C for the listing impairments of mental disorders. She noted that Plaintiff's mental impairments do not individually, or in combination, meet the criteria of listing pursuant to 12.04, 12.08, and 12.09. In doing so, the ALJ relied on Dr. Hirokawa's report that Plaintiff has some moderate difficulties related to persistence, and pace, but that Plaintiff is able to perform a three step command and only had mild limitations in her ability to maintain attention and concentration for extended periods. AR 15. When formulating the RFC, the ALJ gave little weight to Plaintiff's treating psychiatrist's opinion by stating the following :

> Dr. Morgan's opinion is also given little weight as she indicated the claimant has had three episodes of decompensation and the record only shows a three day stay at CBHC due to drinking alcohol and non-compliance with her medications. Furthermore, her assessment is not consistent with her own treating notes and reports. For example, in July 2007 Dr. Morgan indicated that the claimant was stable on medication, cognition intact [sic], and mood good.
> AR 18 (citations omitted).

The ALJ also gave little weight to Dr. Gallucci's opinion because additional evidence received at the hearing indicated that the Plaintiff's impairments were more limiting than the state agency consultative examiner's opinion.[6] AR 18.

Although the ALJ gave Dr. Hirokawa's medical opinion significant weight because it was the most consistent with the other mental health records (AR 19), at the end of the decision the ALJ also stated the following :

> I note that the claimant's attorney posed questions to the vocational expert based on consultative examiner's report which indicates moderate limitations in some areas. However, it must be noted that the limitations given by the consultive examiner are not functional restrictions and he has not provided an explanation of his interpretation of the term "moderate" or any other qualification.
> AR 20.

Plaintiff has argued that based on the limitations noted by Dr. Hirokawa and Dr. Gallucci, the ALJ should have found that Plaintiff was disabled given the VE's testimony. In reply, the Defendant argues that the ALJ did not find that these limitations constituted an RFC. Moreover,

---

[6] Plaintiff argues that the ALJ adopted this opinion, however, the ALJ's decision is clear that this opinion was not adopted.

11

Defendant contends that the ALJ properly incorporated Plaintiff's "mild" and "mild to moderate" limitations by finding Plaintiff could perform simple routine tasks with occasional contact with the public. After reviewing the medical record, the Court agrees with Plaintiff.

First, the ALJ's decision with regard to Dr. Hirokawa's opinion is inconsistent. On the one hand, the ALJ indicates that she gives the report significant weight however, she never clearly addresses all of Dr. Hirokawa's limitations in her opinion. For example, the ALJ notes that Plaintiff has moderate difficulties related to persistence and pace but that Plaintiff is able to perform a three step command and only has mild limitations in her ability to maintain concentration for extended periods. AR 15. However, Dr. Hirokawa noted several other limitations including mild limitations in her ability to: 1) accept instructions from a supervisor and respond appropriately to criticism; 2) perform activities within a schedule; and 3) maintain regular attendance with punctuality. Dr. Hirokawa also identified mild to moderate limitations in Plaintiff's ability to: 1) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace; 2) interact with co-workers; and 3) withstand the stress of a routine workday. Although the ALJ briefly summarizes some of these limitations in the decision (AR 18), she never indicates why the limitations are not incorporated into the RFC.

The ALJ's attempt at discrediting the moderate limitations by making a general statement at the end of the order is not a specific or legitimate reason to reject the limitations. This is especially true given the fact that the psychologist is a state agency consultative examiner who routinely uses the mild and mild to moderate designations. Furthermore, although the ALJ correctly notes that these limitations are not an RFC, it is the ALJ's job to create the RFC based on the limitations. In this instance, the ALJ indicates that she gives Dr. Hirokawa's opinion significant weight but never addresses the numerous limitations identified by this examiner. AR 18. This is significant because the VE specifically testified that an individual with these specific limitations would be unable to work. AR 49-50, 243-244.

Defendant has cited to *Stubbs-Danielson v. Astrue*, 539 F. 3d 1169, 1173 (9th Cir. 2008) for the premise that the ALJ's RFC limiting Plaintiff to simple tasks and occasional contact with

the public addresses all Plaintiff's mild and mild to moderate limitations. However, in *Stubbs-Danielson*, the limitation was clearly identified by the ALJ and only related to the claimant's slow pace and other cognitive related deficiencies. Moreover, in *Stubbs-Danielson*, there were other medical reports in the record indicating that Plaintiff could perform simple work even with this limitation. In this case, there were several limitations at issue that the ALJ did not address and the ALJ discounted the other doctors' opinions. Furthermore, the ALJ's RFC which limits Plaintiff to performing simple routine tasks and occasional contact with the public does not address Dr. Hirokawa's limitations relating to her difficulty: 1) accepting instructions from a supervisor and responding appropriately to criticism; 2) performing activities within a schedule; 3) maintaining regular attendance with punctuality; or 4) completing a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace.

      The Court also has concerns regarding the ALJ's reasons for rejecting the treating psychiatrist's report. As previously noted, the ALJ gave Dr. Morgan's report little weight because the doctor's opinion was not supported by her own treatment notes. AR 18. The ALJ relies on the fact that in July 2007, the doctor noted that Plaintiff was stable on medication, and was in a good mood. AR 18, 283, 287, 292, 293. However, a close review of the medical record reveals that from January to July 2007, Plaintiff was hearing whispers all day (AR 287), was seeing angel babies (292), had other auditory hallucinations (AR 300), had difficulty sleeping (AR 293), had periods of depression and irritability (AR 293, 296, 299) and had thoughts of hurting others (AR 329). Plaintiff experienced these symptoms despite being on a number of medications including Risperdal, Haldol, Paxil, Zoloft, Klonopin during 2006 and 2007. AR 219, 221, 222. Although the ALJ correctly references the fact that in July 2007, Dr. Morgan indicates Plaintiff was stable on medication, the medication the doctor was referring to was Ambien which was prescribed to treat Plaintiff's severe insomnia. AR 283. The ALJ ignores other parts of the doctor's note indicating that Plaintiff had severe depression bipolar disorder and was at a risk of relapse without the Ambien *until her depression resolved.* AR 283. While the ALJ correctly notes that there was only one hospitalization during the time Plaintiff was

13

treated by Dr. Morgan, there are indications that Plaintiff had other periods of decompensation during her care.  AR 292, 293, 297.

Moreover, the ALJ fails to take note that by August through November of 2008, Plaintiff had deteriorated again.  Treatment notes completed by Dr. Ziyar, M.D., a psychiatrist at the Fresno County Mental Health indicate that Plaintiff's medications were not helping, that she was irritable, that she had difficulty sleeping, and that she was having hallucinations even after he had prescribed Seroquel, another antipsychotic medication.  AR 355-358.  In September 2008, Dr. Ziyar indicated that Plaintiff had been suffering from a moderate to severe case of depression for two years, a moderate to severe thought process disorder for two years, a moderate to severe affective disorder for two years, and a moderate anxiety disorder for two years.  AR 359.  Moreover, Plaintiff reported to the Crisis Intervention Services Division of the Fresno County Mental Health Department on September 10, 2008, after having thoughts of hurting people because she was upset she had to wait to get her medications.  AR 329.

Finally, although the ALJ references the fact that Dr. Luu reported Plaintiff showed some improvement on January 29, 2009, and that Plaintiff's thought content, mood, cognition and judgment were normal (AR 17, 320), a thorough review of the medical reports reveals this representation is not complete.  Plaintiff was seeing Dr. Luu to get a medication refill after she had been hospitalized for three days on December 28, 2008, for drinking and failing to take her medications.  AR 320.  Just five days prior to Dr. Luu's evaluation, Plaintiff reported being very agitated, that she could not sleep, and that her mind was racing.  AR 320.  It was noted that in the past, she had pulled her hair, punched walls, broke windows, and used a punching bag when she was angry.  AR 320.  Furthermore, by February 2009, just a few months before Plaintiff's administrative hearing, Plaintiff was experiencing visual and auditory hallucinations three times a week, had a decreased appetite resulting in a weight loss of forty-four pounds, had mood swings, anxiety, agitation, and difficulty managing interpersonal relationships with others.  AR 603, 604.

Given the medical record, there is substantial evidence that the limitations provided in Dr. Hirokawa's report are accurate and are also consistent with Plaintiff's treating physicians' reports

and opinions. Moreover, Dr. Morgan's opinion that Plaintiff is moderately limited in activities of daily living and in maintaining concentration, persistence or pace, and markedly limited in maintaining social functioning is supported by the record.[7] *Lingenfelter v. Astrue*, 504 F.3d at 1028; *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002) (the treating physician's opinion is entitled to deference); *Embrey v. Bowen*, 849 F.2d at 421-22.  Given the VE's testimony related to an individual possessing these limitations, it is clear that Plaintiff is unable to perform regular continuous work and is disabled. AR 49-51.

### *Reversal with Award of Benefits is Appropriate*

The decision whether to remand a matter pursuant to sentence four of Title 42 of the United States Code section 405(g) or to order immediate repayment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  When a court reverses an administrative agency determination, the proper course, except in rare instances, is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16 (2002). Generally, an award of benefits is directed only where no useful purpose would be served by further administrative proceedings or where the record is fully developed. *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1399 (9th Cir. 1988).  In this case, the Court finds the record is fully developed.

In light of the foregoing, there is no need for this Court to consider Plaintiff's remaining arguments. *See Byington v. Chater*, 76 F.3d 246, 250-51 (9th Cir. 1996) ("Because we find that the district court committed error and the decision of the ALJ is supported by substantial evidence, we do not consider the [] other arguments on appeal").

///
///
///

---

[7] The Court notes that Dr. Gallucci's opinion also indicates that Plaintiff was "moderately limited" in her ability to: (a) complete a normal work day or work week and to perform at a consistent pace; (b) get along with co-workers or peers; (c) respond to changes in the work setting; (d) maintain social functioning, and (e) maintain concentration, persistence, or pace.  AR 266, 270-271.

**RECOMMENDATION**S

Based on the above, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, it is recommended that this case be REMANDED to the Commissioner of Social Security for a calculation of benefits only.  Moreover, it is recommended that the Clerk of this Court be DIRECTED to enter judgment against Defendant, Commissioner of Social Security and in favor of Plaintiff Christina Maria Parra.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within **fifteen (15)** days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 2, 2012**            /s/ **Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE